EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:10-CV-207-KSF

SAMMY H. HARRIS                                                               PLAINTIFF

vs.                         **OPINION AND ORDER**

SCOTTY ANDERSON, et al.                                      DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Defendants for partial summary judgment. For the reasons discussed below, the motion will be granted.

I.      **BACKGROUND**

Sammy Harris' ("Harris") claims against former Madison County Sheriff's Deputy, Sergeant Scotty Anderson ("Anderson"), include excessive force under 42 U.S.C. § 1983 and state-law claims of assault and battery, negligence and intentional infliction of emotional distress. The claims against former Sheriff, Nelson O'Donnell ("O'Donnell"), and the Madison County Sheriff's Department ("Department") include failure to train and supervise and state-law negligent hiring and supervision. [Complaint, DE 1]. All claims asserted against Anderson and O'Donnell appear to be in their official and individual capacities.

Defendants do not seek summary judgment for the claims arising from the use of force asserted against Anderson in his individual capacity. Instead, they seek judgment on all claims alleged in their official capacity and for claims of negligent hiring, training and supervision in all capacities. Additionally, Defendants seek summary judgment on Harris' claim of intentional infliction of emotional distress. [DE 44].

In response to the motion for summary judgment and its argument on sovereign immunity, Harris agrees that Counts 1-3 against Anderson in his official capacity should be dismissed. [DE

46, p. 2]. Harris also agrees that any claim against O'Donnell in his official capacity in Counts 4-7 should be dismissed. Lastly, Harris agrees that his claim for outrage, Count 4, should be dismissed. Harris contends, however, that there are questions of material fact with respect to all of his claims against Anderson and O'Donnell in their individual capacities. *Id.* [DE 46].

In reply, Defendants note that Harris did not expressly concede summary judgment on Count 5 regarding failure to train. However, he did not present any argument or facts in opposition to the motion on this count. Accordingly, Defendants argue they should be granted summary judgment on Count 5. [DE 48].

Regarding the underlying facts of the case, the parties are in sharp disagreement. Only a few facts are undisputed. All agree that Harris' daughter, Sheri Harris (now Puckett),[1] called the police department the morning of July 31, 2009, to report that a taxi driver the night before had stolen her money and her cell phone. Anderson responded to the call around 11:00 a.m. Harris, age 63, who suffers from degeneration of his spine and had two heart surgeries in 2009, was in a motorized scooter. As Harris and Anderson talked on the front porch, Sheri came out a side door of the house and onto the front porch. Thereafter, the parties' versions of the events differ dramatically.

### A. Sheri and Harris' Version of the Facts

Sheri claims Anderson immediately asked her if she had been drinking and advised her she was under arrest, after which he threw her face down on the porch. [DE 1, ¶ 12]. Harris claims that Anderson, apparently accidentally, put pressure on the front footrest of Harris' scooter and propelled him out of the chair. As Harris fell, Anderson tackled him, causing his head to hit the concrete and resulting in a severe cut. Harris claims that Anderson then kneed hiym in the back of the head, went out of the gate in the yard, and pulled out his taser. As Anderson yelled "Taser!!

---

[1] Sammy Harris will be referenced as "Harris" and Sheri Harris as "Sheri."

Taser!!," Sheri yelled that Harris had just had heart surgery. Anderson tased Harris while he was on the ground, unable to get up and unarmed. *Id.* ¶¶ 13-14.

### B. Anderson's Version of the Facts

Anderson testified that when Sheri came around to the front porch, she was staggering, had bloodshot eyes, and had fluid on her shirt. She attempted to show Anderson her injury from the cab driver and staggered toward him. He raised his hand to keep her at a distance, and she became irate and began pushing him. As he attempted to put her under arrest for disorderly conduct and public intoxication, she began struggling with him and resisting. He took her to the ground on the porch where Harris was sitting in his motorized wheelchair. [DE 44-1, pp. 6-7].

Anderson said that Harris suddenly joined the struggle, falling on Anderson's back and attempting to pull Anderson's arms behind his back. Soon they went down the wheelchair ramp and through the front yard, crashing into a chain link fence. Anderson drew his taser, held Harris off with one arm, and fired the taser from a very close distance. One of the taser probes struck Harris and he fell to the ground. Anderson called for backup as Harris returned to his motorized chair. *Id.* at 7.

## II. ANALYSIS

### A: Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all

facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

**B:     Official Capacity Claims**

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), the Supreme Court "held that civil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom." *Los Angeles County, California v. Humphries*, 562 U.S. ___, 131 S.Ct. 447, 449 (2010). Additionally, with respect to state-law claims, "when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled. " *St. Matthews Fire Prot. Dist. v. Aubrey*, 304 S.W.3d 56, 60 (Ky. Ct. App. 2009) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). "A county government is cloaked with sovereign immunity." *Id.* (quoting *Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003)). Harris concedes that his claims against the Defendants in their official capacities cannot survive the motion for summary judgment.   [DE 46, p. 2].  Accordingly, summary judgment is granted in favor of the Defendants on all official capacity claims.

### C: Counts 4 and 5

Harris concedes that Defendants are entitled to judgment on Count 4 regarding intentional infliction of emotional distress. [DE 46, p. 2] Accordingly, summary judgment is granted.

Count 5 alleges a failure to train. In response to Defendants' extensive evidence regarding the training provided to Anderson before he became a member of the Sheriff's Office, Harris does not provide any countervailing facts or authority. Accordingly, summary judgment is granted on Count 5.

### D: Federal Failure to Supervise Claim

Count 6 alleges that former Sheriff O'Donnell and the Madison County Sheriff's Department were deliberately indifferent to the citizens of Madison County for their failure to properly supervise employees about interactions with individuals, tasers and the force continuum. [DE 1, ¶ 31]. To succeed on the claim, Harris must show both: (1) the deprivation of a constitutional right, and (2) the Defendants are responsible for that violation. *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). To be liable under § 1983, the supervisory official must have "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).

The elements of a failure to train or supervise claim were identified as follows:

> To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.

*Ellis*, 455 F.3d at 699. The Sixth Circuit has identified two situations that justified a conclusion of deliberate indifference. "One is failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Id.* at 700-701, quoting *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). "A second type of ... deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id.* at 701.

As noted above, Harris alleged failure to train in Count 5. After Defendants detailed in their motion the extensive general law enforcement training Anderson had, including training by a certified taser trainer before being issued his weapon, Harris did not offer any evidence to oppose summary judgment. Thus, the requirements of the first situation are not satisfied.

With respect to the second situation, Harris must show that, in light of the information O'Donnell possessed, Anderson showed a strong likelihood that he would use excessive force such that O'Donnell's failure to take adequate precautions amounted to deliberate indifference. The deliberate indifference inquiry is not satisfied by a mere probability that an inadequately supervised officer may inflict a constitutional injury. The finding that is required is "that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Board of County Commissioners v. Brown*, 520 U.S. 397, 412 (1997) (emphasis in original); *Doe v. Patton*, 381 F. Supp.2d 595, 601 (E.D. Ky. 2005). Harris must show that the "plainly obvious consequence" of the alleged failure to supervise or discipline Anderson properly would be Anderson's use of excessive force on a third party. *Brown*, 520 U.S. at 412. Stated differently, the Sixth Circuit said that the "evidence must show that the need to act is so obvious that the [Defendants'] 'conscious' decision not to act can be said to amount to a 'policy' of deliberate indifference to [Plaintiff's] constitutional rights." "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to [constitutional violations]." *Doe v. Claiborne County Tennessee*, 103 F.3d 495, 508 (6th Cir. 1996).

In support of his claim of failure to supervise, Harris relies on one letter dated December 23, 2009 from Sheriff O'Donnell. That letter said in part:

> Certain occurrences have been brought to my attention by other employees concerning Sergeant Anderson's behavior and temperament. Such as, personal confrontations with employees, over aggressive behavior, and extreme mood changes.
>
> * * *

> Since his tour of duty he has been employed with my office for the past three years and I have received numerous complaints concerning his behavior mostly due to uncontrollable outbursts of anger.

[DE 46-1, Ex. 1]. This letter related to Anderson's termination from the Madison County Sheriff's Office four months after the taser incident. Harris also relies on O'Donnell's testimony that he moved Anderson to the day shift because he received complaints regarding verbal conflicts with people, and he wanted to keep his eye on Anderson more. [O'Donnell Depo. p. 76; DE 46, p. 5]. This change in shifts was before Harris was tased. Harris also notes O'Donnell admitted that it is "possible" for an officer with uncontrollable outbursts of anger to be more likely to engage in excessive force. *Id.* at 83-84.

The rest of O'Donnell's testimony is enlightening, however. He stated that he never believed Anderson posed a risk of the use of excessive force. When asked if "an officer has uncontrollable outbursts of anger, do you think it would make them [sic] more likely to use excessive force," O'Donnell answered: "Well, I had never seen excessive force demonstrated by Sergeant Anderson, so I had no reason to think that he might." [O'Donnell Depo., p. 83]. Col. Robinson, a member of the supervisory staff in the Department confirmed that Anderson did not have any history of excessive force. He had never seen Anderson lose any control with respect to the use of force. Robinson reviewed all of the reports that came through and he never had an occasion where he felt like Anderson used inappropriate force as a police officer. He acknowledged that Anderson could lose his temper, but Robinson never had an occasion where he was concerned about Anderson's capabilities as a police officer. [Robinson Depo., pp. 56-58].

There is no evidence here of repeated complaints of constitutional violations. There is no evidence of instances of Anderson's behavior from which a jury could possibly conclude that it was plainly obvious to O'Donnell that Anderson posed a risk of using excessive force; therefore, the Department and O'Donnell were not deliberately indifferent to Harris' constitutional rights as a matter of law. At most, Harris has established that Anderson's supervisors believed he was abrupt

and had verbal confrontations with co-workers. Harris has not cited any authority remotely holding that allowing Anderson to continue as a Sheriff's Deputy under these circumstances was a clearly established failure to supervise.

In *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997), the court said the Sheriff did not disregard a known or obvious risk of injury from excessive force in hiring Brown. In that case, the Sheriff's office had notice that, during college, Brown was charged with assault and battery, resisting arrest and public drunkenness and had otherwise pled guilty to various driving-related offenses, including moving violations, driving on a suspended license and being in control of a vehicle while intoxicated. *Brown*, 520 U.S. at 413.

In *Ellis*, a school district was not deliberately indifferent to substitute-teacher abuse of students through corporal punishment, despite ten reports during a two-year period. Only two of the reports documented corporal punishment as severe as the plaintiff's claims. The other eight reports reflected more mild punishment. Because the school district operated 127 schools with over 69,000 students, the court held that plaintiff had to allege and produce evidence that two incidents of abuse over two years is an excessive number. Because there was no such evidence, the court held that the plaintiff could not "show that the School District had notice of a problem requiring additional training or supervision." *Ellis*, 455 F.3d at 701.

Harris' reliance on *Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1996) and *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003) is misplaced. In *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), the court distinguished both cases. "In both *Taylor* and *Leary* the plaintiffs presented evidence that it was the active performance of the defendants' individual job function which directly resulted in their constitutional injury." *Id.* at 751. Taylor involved a prison warden who was individually responsible for insuring all prisoner transfers did not risk inmate safety. The warden failed to establish a reasonable system to review prisoner files before transfer or to review them himself. He approved transfers which directly affected prisoner safety and, thereby, resulted

8

in violations of prisoner Eighth Amendment rights. *Id.* Similarly, in *Leary*, a school superintendent was responsible for approving all teacher transfers and putting the transfers in operation. The plaintiff teacher alleged that her transfer was in retaliation for her exercise of free speech. In both cases, it was the specific duty to act and the active conduct by the supervisor that resulted in the constitutional violation. By contrast, Harris fails to offer evidence in the present case of a duty to act by O'Donnell and active conduct resulting in the injury. As stated in *Gregory*, there is "no evidence that any execution of the supervisor's job function resulted in Plaintiff's injury." *Gregory*, 444 F.3d at 751. Defendants are entitled to summary judgment on this claim.

### E: State-law Negligent Supervision

Count 7 alleges that the Madison County Sheriff's Department and O'Donnell breached their state-law duty in hiring, supervising and retaining Anderson. *Id.* at ¶ 35. Madison County is entitled to sovereign immunity as noted above. O'Donnell is entitled to qualified immunity from tort claims arising from discretionary acts performed in good faith and within the scope of his authority. *Yanero v. Davis*, 65 S.W.2d 510, 522 (Ky. 2001). "Once the officer or employee has shown *prima-facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* at 523; *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007) ("The burden is on the plaintiff to show that the public official or employee was not acting in good faith.").

Discretionary acts or functions are "those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* at 522. More recently, Kentucky's highest court said:

> Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010). On the other hand, ministerial acts:

9

are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances their acts are to be done.

*Doe v. Patton*, 381 F. Supp.2d 595, 603 (E.D. Ky. 2005), quoting Restatement (Second) of Torts § 895D.

Harris did not respond to Defendants' motion for summary judgment on this claim. There is nothing to refute the *prima facie* case that Anderson's supervision was within the scope of O'Donnell's discretionary authority. Additionally, there is no evidence to meet Harris' burden of showing that O'Donnell was acting in bad faith in his supervision of Anderson. Accordingly, the motion for summary judgment on Count 7 will be granted.

### III. CONCLUSION

**IT IS ORDERED** that Defendants' motion for partial summary judgment [DE 44] is **GRANTED** as to:

- A. All claims against all Defendants in their official capacities;
- B. Count 4 alleging intentional infliction of emotional distress;
- C. Count 5 alleging failure to train;
- D. Counts 6 and 7 alleging failure to supervise and negligent hiring, supervision and retention; and
- E. Madison County Sheriff's Department and Nelson O'Donnell are **DISMISSED** as parties herein.

This July 29, 2011.



**Signed By:**

*Karl S. Forester* KSF

**United States Senior Judge**